IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:09-CV-20-D

| | | |
|---|---|---|
| RAM OF EASTERN NORTH CAROLINA, LLC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORDER** |
| WEYERHAEUSER REAL ESTATE DEVELOPMENT COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

On December 30, 2008, RAM of Eastern North Carolina, LLC ("RAM" or "plaintiff") filed suit in Craven County Superior Court against Weyerhaeuser Real Estate Development Company ("WREDCO" or "defendant") [D.E. 1-1]. The dispute arises out of RAM's contract to purchase certain real property in Craven County, North Carolina from WREDCO. On January 30, 2009, WREDCO removed the action to this court [D.E. 1]. On November 2, 2009, the court dismissed four counts of the complaint, but allowed RAM to proceed on its claims for breach of the covenants of seisin and the right to convey, breach of the covenant against encumbrances, breach of the covenants of warranty and quiet enjoyment, breach of contract, rescission, and unjust enrichment [D.E. 19]. On October 1, 2010, WREDCO filed a motion for summary judgment on the remaining claims [D.E. 26]. On October 29, 2010, RAM responded in opposition [D.E. 38]. On November 15, 2010, WREDCO replied [D.E. 46]. As explained below, the court grants in part and denies in part WREDCO's motion for summary judgment.

I.

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue

of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

RAM acquires and develops real property. Brydge Dep. Tr. 13. RAM consists of Mitchell Brydge ("Brydge"), his wife, his sister, and his brother-in-law. Id. at 12–13. In April of 2003, Brydge enlisted Thomas Ensley ("Ensley"), a licensed real estate broker, to assist in locating real property suitable for residential development. Ensley Dep. Tr. 9–11. Ensley located a 10.21 acre tract of land offered for sale by WREDCO ("the property"), located in Craven County adjacent to U.S. Highway 70 and directly abutting tracks owned by the North Carolina Railroad ("NCRR"), which leases the tracks to Norfolk Southern Railway ("Norfolk Southern"). Id. at 11, 44; Peregoy Dep. Tr. 13; Brydge Dep. Tr. 21. Ensley contacted WREDCO's representative, Kenneth Peregoy ("Peregoy") to ask about the price and zoning of the property. Ensley Dep. Tr. 12; Peregoy Dep. Tr. 23. In June of 2003, Ensley, on behalf of RAM, began negotiating a sales contract with WREDCO. Ensley Dep. Tr. 14; Peregoy Dep. Tr. 22. The property consisted of four blocks. Pl.'s Mem. Opp'n Summ. J., Ex. 42. Because the tract abutted the site of the Battle of New Bern,[1] the New Bern

---

[1] On March 14, 1862, Union forces commanded by General Ambrose E. Burnside attacked Confederate defensive positions along the Atlantic and North Carolina Railroad. After a four-hour battle and 1,000 casualties, the Union forces drove the Confederates out of New Bern. See National Park Service, American Battlefield Protection Program, Battle Summary: New Berne, NC, http://www.nps.gov/hps/abpp/battles/nc003.htm (last visited Aug. 23, 2011).

Historical Society negotiated acquisition of the southern most block. Brydge Dep. Tr. 27–28, 32; Ensley Dep. Tr. 23; Pergoy Dep. Tr. 25–28; compare Pl.'s Mem. Opp'n Summ. J., Ex. 26 with id., Ex. 42. On June 9, 2003, Ensley drafted a purchase contract for only the northern three blocks using a pre-printed real estate form, and submitted it to WREDCO for the purchase of the property. Thomspon Dep., Ex. 4 at 4. The parties agreed to make the sale contingent on the homeowner's association's approval and settled on a purchase price of $170,000; however, WREDCO refused RAM's request to construct a road along the east edge of the property, abutting NCRR's right of way. Id. at 3; Ensley Dep. Tr. 14–16; Peregoy Dep. Tr. 25, 49–50. On June 18, 2003, Pergoy signed the contract on behalf of WREDCO. Thompson Dep., Ex. 4. The contract required conveyance by a general warranty deed "free of all encumbrances except . . . utility easements and unviolated restrictive covenants that do not materially affect the value of the property; and such other encumbrances as may be assumed or specifically approved by [RAM]. The property must have legal access to a public right of way." Id. at 2.

Although the purchase contract does not require one, the parties agree a "due diligence" period followed the signing of the contract. Brydge Dep. Tr. 34–35; Peregoy Dep. Tr. 28. During this period, the homeowner's association granted approval for multi-family home construction, the property was rezoned, and WREDCO commissioned Bob Chiles to create a map delineating the partition line between the property to be purchased by RAM and the property to be transferred to the Historical Society. Peregoy Dep. Tr. 28–31. Chiles delivered this map to Peregoy, who delivered it to Ensley, who delivered it to RAM. Id. at 32; Ensley Dep. Tr. 23; Pl.'s Mem. Opp'n Summ. J., Ex. 26.

During the due diligence period, RAM hired an attorney who performed a truncated title examination of the real property, using a method known as "tacking." Atkins Dep. Tr. 85, 88; see N.C. Revised Rules of Prof'l Conduct RPC 99 (1991). RAM chose to rely on the map provided by WREDCO rather than commissioning a separate survey of the property. Brydge Dep. Tr. 52–54.

3

Brydge personally walked the property before closing. Id. at 54–55. Following the due diligence period, RAM proceeded to close the sale of the property. Atkins Dep. Tr. 71. On December 19, 2003, a deed granting title to RAM ("the deed") was registered in Craven County. Thompson Dep., Ex. 3 at 1. The deed stated that the property was "conveyed subject to a non-exclusive, permanent and perpetual easement for access and utilities and said easement is shown on the map . . . and identified as follows: '50' ACCESS & UTILITY EASEMENT.'" Id. at 2; see also Ex. 2 (map). The deed also stated that the property was conveyed "subject to those easements of record and utility rights-of-way." Id., Ex. 3 at 3. Finally, the deed included covenants of seisin, right to convey, against encumbrances, warranty, and quiet enjoyment. Id. at 4.

After purchasing the property, RAM built the road WREDCO refused to construct and installed utility lines along the east portion of the track, directly next to the railroad right of way. Brydge Dep. Tr. 73. RAM intended to construct high-end townhomes on speculation. Id. at 86, 91–92, 104–05. However, vertical construction did not begin until 2007. Id. at 82. In January 2008, a Norfolk Southern lineman called Brydge, and told him that a berm recently altered by RAM obscured the sight line of a nearby crossing. Id. at 22–25. Shortly after the phone call, RAM received a letter from NCRR asserting that NCRR owned a 200 foot right of way which included the land upon which RAM had constructed its road. Id. at 22–25; Thompson Dep., Ex. 9. Although NCRR has demanded RAM cease any additional construction within its claimed right of way and requested that RAM's access road be removed, RAM has not removed the road. Id. at 83–84. However, NCRR has not filed suit against RAM. Id. Furthermore, it is unclear whether RAM will be required to move the utility infrastructure below the road. Id. at 101–02.

RAM asked its title attorney to determine NCRR's interest in the land. The attorney's research revealed multiple records in the property's chain of title indicating the right of way as only 100 feet in width. See Adtkins Dep. Tr., Exs. 12, 13, 14, 15. However, a map depicting an "out" conveyance of another property one mile south indicates the easement is 200 feet in width. Id., Ex.

4

38. Other documents in the public record are ambiguous. See, e.g., id., Exs. 16, 20 (maps depicting right of way as either 100 or 200 feet wide). Although NCRR has not conceded the point, RAM's title attorney concluded that NCRR does not own the claimed right of way, but rather holds an easement. See Adtkins Dep. Tr. 41–42, 45–47.[2]

After receiving NCRR's letter, RAM completed the townhouses it had begun constructing. Brydge Dep. Tr. 84. However, the potential inaccessibility of the townhouses caused RAM to postpone marketing the townhouses. Id. at 89. In January 2009, RAM secured alternative access to the property across the frontage owned by the homeowner's association and directly adjacent to the existing road. Id. at 90. However, the "worst real estate slump for new house sales this country's seen in 25 years" prevented the sale of the completed townhouses, even at "the give-away price" of $265,000 per unit. Id. at 91–92. Market conditions also have prevented additional construction on the 28 lots unaffected by the dispute with NCRR. Id. at 85. In total, RAM invested $2.175 million in developing the property. Id. at 94.

On December 30, 2008, RAM filed suit against WREDCO. On January 30, 2009, WREDCO removed the action to this court. On November 2, 2009, the court dismissed four counts of the complaint. RAM's remaining claims allege that WREDCO breached the deed's covenant of seisin and right to convey (count one), breached the deed's covenant against encumbrances (count two), breached the deed's covenant of warranty and quiet enjoyment (count three), and breached the June 18, 2003 contract of sale (count four). Alternatively, RAM seeks rescission of the transfer (count nine) and compensation for unjust enrichment should the rescission be granted (count ten).

---

[2] Although RAM claims NCRR has not conceded that their right of way is held in easement and not in fee, NCRR is not a party and therefore its rights to the property cannot be litigated in this action. Thus, the court need not determine the property interest held by NCRR and assumes (without deciding) that NCRR's interest is an easement.

5

II.

As for RAM's claims for breaches of the deed's covenants (counts one, two, and three), WREDCO essentially argues that these claims fail because the deed expressly excludes liability for "easements of record and utility rights of way." Def.'s Mem. Supp. Mot. Summ. J. 17–24 (quoting Thompson Dep., Ex. 3). Alternatively, WREDCO argues that the claims fail because of the unique character of railroad rights of way. Id. at 24–26.

First, WREDCO claims the railroad right of way is a "utility right of way" as the term is used in the deed. Def.'s Mem. Supp. Mot. Summ. J. 18–20. "A deed is to be construed by the court, and the meaning of its terms is a question of law, not of fact." Mason v. Andersen, 33 N.C. App. 568, 571, 235 S.E.2d 880, 882 (1977). Although North Carolina has treated railroads as utilities in the past, Congress drastically preempted state regulation of railroads as public utilities by passing the Staggers Rail Act of 1980, Pub. L. No. 96-448, 94 Stat. 1895. See ICC v. Texas, 479 U.S. 450, 452–55 (1987). In response, the North Carolina General Assembly passed legislation transferring the state's remaining responsibilities for railroads from the North Carolina Public Utilities Commission to the North Carolina Department of Transportation ("NCDOT"). See, e.g., 1995 N.C. Sess. Laws 732. Moreover, in 1998 the North Carolina General Assembly passed "An Act to Repeal Obsolete or Preempted Provisions of the General Statutes Affecting Railroads, to Recodify Certain Railroad Statutes, and to Make Conforming Changes and Clarifying Changes." 1998 N.C. Sess. Laws 329. That law removed railroads from the definition of public utility, and finalized movement of railroad oversight to the NCDOT. Id.; see N.C. Gen. Stat. § 62-3(6), (23). Thus, when RAM and WREDCO entered into their contract, North Carolina law no longer defined railroads to be public utilities. Furthermore, WREDCO had previously conveyed and subsequently repurchased the property. The deeds for those transfers include both the utility exclusion and additional conditional language specific to the railroad right of way: "This property is conveyed subject to the interest of the railroad as the same is or may be located upon the ground." Thompson

Dep., Exs. 5 at 2, 34 at 3. Here, WREDCO drafted the deed, and chose to omit the language specific to the railroad right of way. Thompson Dep. Tr. 18, 38. When construing a deed, a court "cannot reject what the parties inserted or insert what the parties elected to omit." Weyerhauser Co. v. Carolina Power & Light Co., 257 N.C. 717, 719, 127 S.E.2d 539, 541 (1962). Furthermore, any ambiguity in the term "utility" must be construed against WREDCO as the drafting party. Novacare Orthotics & Prosthetics E., Inc. v. Speelman, 137 N.C. App. 471, 476, 528 S.E.2d 918, 921 (2000). Therefore, the railroad right of way is not a utility easement as that term is used in the deed.

Next, WREDCO argues the railroad right of way is an "easement of record." Def.'s Mem. Supp. Mot. Summ. J. 21–24. WREDCO claims NCRR's easement falls within the meaning of an "easement of record" for three reasons: (1) the 1852 statutory charter establishing the Atlantic and North Carolina Railroad Company is a publicly available record; (2) a recorded map concerning an "out conveyance" of a nearby property depicts the easement as being 200 feet; and (3) previous deeds of the property state a railroad interest "is or may be located upon the ground." Id.

An "easement of record" is an easement "recorded in the appropriate records." Black's Law Dictionary 1196 (9th ed. 2009). Furthermore, "record notice" is "[c]onstructive notice of the contents of an instrument, such as a deed or mortgage, that has been properly recorded." Id. at 1165. Inquiry notice is "notice attributed to a person when the information would lead an ordinarily prudent person to investigate the matter further." Id. Thus, the plain meaning of the term "easement of record" would not include inquiry notice. Furthermore, North Carolina follows the pure-race theory of title. See Terry v. Bros. Inv. Co., 77 N.C. App. 1, 6, 334 S.E.2d 469, 472 (1985). Although unrecorded encumbrances may be enforceable if referenced in prior recorded instruments, such a reference must be made with sufficient certainty, including a definite statement of the amount of the prior encumbrance. See Hardy v. Fryer, 194 N.C. 420, 422, 139 S.E. 833, 834 (1927). Furthermore, although each deed in a chain of title provides notice "of all it contain[s]," Reed v. Elmore, 246 N.C. 221, 231, 98 S.E.2d 360, 368 (1957), out conveyances must expressly impose restrictions on

7

property retained by the grantor to provide notice to a subsequent grantee. St. Luke's Episcopal Church v. Berry, 2 N.C. App. 617, 624, 163 S.E.2d 664, 669 (1968). Here, all three of WREDCO's arguments tend to establish RAM received inquiry notice, but they fail to demonstrate record notice of NCRR's interest. First, the statute is not recorded with the register of deeds. Thus, the easement is not "recorded in the appropriate records" for property interests, and it cannot provide "record notice." Second, the out conveyance of a different piece of property, even if read in its entirety, provides no definitive notice of the width of NCRR's interest adjacent to the property located one mile away. Third, the language in prior deeds of the RAM property concerning NCRR's property interest that "is or may be located upon the ground" lacks specificity. Finally, any ambiguity in the term "easement of record" must be construed against WREDCO as the drafting party. See Novacare Orthotics & Prosthetics E., Inc., 137 N.C. App. at 476, 528 S.E.2d at 921. Therefore, for purposes of the deed from WREDCO to RAM, the railroad easement was not "of record."

Finally, WREDCO argues RAM's covenant claims fail because of the unique nature of railroad easements. In North Carolina, a purchaser who alleges a breach of covenant may not recover where the breach concerns a public highway or railroad right of way if the purchaser had actual knowledge of the right of way or the property was "obviously and notoriously subjected at the time to some right of easement or servitude." Hawks v. Brindle, 51 N.C. App. 19, 24, 275 S.E.2d 277, 281 (1981) (quotation omitted). "In short, the issue is whether the covenantee knew or should have known that the land he bought was subject to a public right of way." Id., 275 S.E.2d at 281. However, under North Carolina law, whether a right of way was so open and notorious as to impute knowledge on the purchaser is a question of fact for the jury. Id., 275 S.E. 2d at 281. A jury may consider whether the right of way is in active use, and any representations of the seller as to the size and extent of a right of way. McKnight v. Cagle, 76 N.C. App. 59, 65–66, 331 S.E.2d 707 (1985); Hawks, 51 N.C. App. at 25, 275 S.E.2d at 281. Although North Carolina courts have held that operation of a railroad over a portion of land is open and notorious as a matter of law, NCRR's track

8

did not operate over the property, but rather next to the property. See Thompson Dep., Ex. 2; Brydge Dep. 23, 103; Def.'s Mem. Supp. Mot. Summ. J. 2–3. Therefore, the exact boundary of NCRR's interest in the property was not open and notorious as a matter of law. Furthermore, Peregoy, WREDCO's employee, provided the Chiles map to Ensley, RAM's agent, and the Chiles map represented the right of way as only 100 feet wide. Peregoy Dep. Tr. 28–32; Ensley Dep. 17–18, 23–25; Pl.'s Mem. Opp'n Mot. Summ. J., Ex. 26. Thus, viewing the evidence in the light most favorable to RAM, summary judgment on this issue is denied.

As for RAM's claim for breach of the covenants of seisin and right to convey, WREDCO argues that count one fails because NCRR's interest is only an easement and therefore outside the scope of the covenants. See Def.'s Mem. Supp. Mot. Summ. J. 26. The covenants of seisin and right to convey are synonymous. Pridgen v. Long, 177 N.C. 189, 196, 98 S.E. 451, 454 (1919). To show a breach the covenants of seisin and right to convey, a plaintiff must prove the defendant had no title to the property or no right to convey the property. Id. at 195, 98 S.E. at 453. However, the existence of a public right of way on the property is not a breach of the covenant of seisin. Goodman v. Hellig, 157 N.C. 6, 8, 72 S.E. 866, 867 (1911); Hawks, 51 N.C. App. at 23, 275 S.E.2d at 280. Here, no genuine dispute of material fact exists as to the nature of NCRR's right of way. See supra note 2. Because NCRR's right of way is an easement, RAM's claim for breach of the covenants of seisin and right to convey fails.

As for RAM's claim for a breach of the covenant against encumbrances, an encumbrance includes "any burden or charge on the land and includes any right existing in another whereby the use of the land by the owner is restricted." Gerdes v. Shew, 4 N.C. App. 144, 148, 166 S.E. 2d 519, 522 (1969). Generally, a purchaser's actual or record notice of an encumbrance does not bar recovery. Id. at 149–50, 166 S.E.2d at 523–24. When an encumbrance on land cannot be extinguished because the holder refuses to release it, the purchaser is entitled to recover the diminution in value of the property caused by the encumbrance at the time of conveyance. Hawks,

9

51 N.C. App. at 25, 275 S.E. 2d at 281. However, open and notorious railroad and highway easements are an exception to this rule. Goodman, 157 N.C. at 8–9, 72 S.E. at 867. Here, WREDCO relies on this exception. See Def.'s Mem. Supp. Mot. Summ. J. 27. However, as noted, a genuine dispute of material fact exists on this issue. Thus, summary judgment on count two is denied.

As for RAM's claim for breach of the covenant of warranty and quiet enjoyment, an ouster or eviction is a necessary prerequisite to an action for breach of these covenants. Smith v. Peoples Bank & Trust Co., 254 N.C. 588, 592, 119 S.E.2d 623, 627 (1961); Shimer v. Traub, 244 N.C. 466, 467–68, 94 S.E2d 363, 364 (1956). An ouster or eviction occurs when a purchaser in possession of real property yields possession to the rightful owner. Shuford v. Phillips, 235 N.C. 387, 389, 70 S.E. 2d 193, 196 (1952). When not evicted by legal process, a plaintiff must prove the existence of paramount title and possession by the holder of the paramount title. Id., 70 S.E.2d at 195. WREDCO argues that count three fails because RAM cannot prove an eviction or ouster from any portion of the property. See Def.'s Mem. Supp. Mot. Summ. J. 28. RAM responds that NCRR's demand to remove the road constitutes an ouster. See Pl.'s Mem. Opp'n Mot. Summ. J. 29.

In North Carolina, a railroad right of way held by easement does not preclude use of the land by the underlying fee holder. See Norfolk S. Ry. Co. v. Smith, 169 N.C. App. 784, 788–89, 611 S.E.2d 427, 430 (2005) (collecting cases). Instead, a fee holder may use the portions of the right of way not required for railroad purposes, subject to the railroad's right to expansion of its use "for any legitimate purpose as determined by the railroad's sound business judgment." Id., 611 S.E.2d at 430. Although this right of expansion is broad, it is not without limitation. See, e.g., Atl. Coast Line R.R. v. Bunting, 168 N.C. 579, 580, 84 S.E. 1009, 1010 (1915); Raleigh & Augusta Air-Line R.R. v. Sturgeon, 120 N.C. 225, 230, 26 S.E. 779, 781 (1897). Thus, at the time of conveyance, RAM enjoyed possession of the property, regardless of the width of NCRR's right of way. Furthermore, RAM continued construction after receiving NCRR's letter, demonstrating its

10

Case 4:09-cv-00020-D   Document 49   Filed 08/23/11   Page 10 of 16

continued possession. RAM's acquisition of additional access and adjustments to its improvement plans, while prudent, only served to guarantee accessibility should NCRR take possession of the right of way in the future. See Atkins Dep. Tr. 47–48. Thus, because NCRR is not in possession of the right of way and NCRR has not evicted RAM by legal process, no ouster or eviction has occurred. Therefore, count three fails.

As for RAM's breach of contract claim, WREDCO argues that count four fails because the contract's clause requiring title be transferred clear of all encumbrances was a condition precedent, and RAM elected to close the transaction waiving the condition. See Def.'s Mem. Supp. Mot. Summ. J. 9–11. RAM claims the condition to convey at the closing marketable title free of encumbrances by delivery of general warranty deed survived the closing because of the contract's survival clause. See Pl.'s Mem. Opp'n Mot. Summ. J. 30; Thompson Dep., Ex. 4 at 3 ("If any provision herein contained which by its nature and effect is required to be observed, kept or performed after the Closing, it shall survive the Closing . . . ."). "Generally, a contract for the sale of land is not enforceable when the deed fulfills all the provisions of the contract, since the executed contract then merges into the deed." Biggers v. Evangelist, 71 N.C App. 35, 38, 321 S.E.2d 524, 526 (1984). The parties' intent overcomes the general presumption of merger. Id. at 38–39, 321 S.E.2d at 426–27. "The intent of the parties is determined by examining the plain language of the contract." Metcalf v. Black Dog Realty, LLC, 200 N.C. App. 619, 633, 684 S.E.2d 709, 719 (2009). When the language of the contract is unambiguous, interpretation of the contract is a question of law. Id. Here, the plain language of the contract supports merger. Delivery of a general warranty deed at closing "by its nature and effect is required to be . . . performed" at closing, not after. See Thompson Dep., Ex. 4 at 3. Thus, upon accepting the deed, the contractual guarantees concerning quality of title merged with the covenants of the general warranty deed. Therefore, RAM's claim for breach of contract fails.

11

## III.

As for RAM's alternative claims for rescission and unjust enrichment (counts nine and ten), WREDCO argues that: (1) the claim is precluded by the statute of limitations because RAM could have discovered the mistake with due diligence; (2) the claim fails because the width of NCRR's right of way was not an essential element of the land transfer; and (3) the claim fails because RAM assumed the risk of any mistake. Def.'s Mem. Supp. Mot. Summ. J. 11–16.[3] Furthermore, WREDCO claims that because the land transfer cannot be rescinded, the claim for unjust enrichment also must fail. Id. at 16–17. RAM contends that the width of the right of way was material to the contract that the question of due diligence and assumption of the risk must be presented to the jury. Pl.'s Mem. Opp'n Mot. Summ. J. 12–18.

A plaintiff may elect between rescission of a deed or recovery for breach of covenant.[4] Warren v. Susman, 168 N.C. 457, 459–60, 84 S.E. 760, 761 (1915); Canady v. Mann, 107 N.C. App. 252, 256–57, 419 S.E.2d 597, 600 (1992). A deed may be rescinded upon a showing of mutual mistake or unilateral mistake caused by a representation of the non-mistaken party. Taylor, 161 N.C. App. at 304–05, 588 S.E.2d at 54–55. To rescind a transfer of real property, a plaintiff must show: (1) the exercise of due diligence in discovering the alleged mistake to avoid the time bar in N.C. Gen. Stat. § 1-52(9); (2) "clear cogent and convincing evidence establishing that he was mistaken";

---

[3] WREDCO claims that it could not have caused RAM's mistake as a matter of law because the court previously dismissed RAM's claim of negligent misrepresentation. See Def.'s Mem. Supp. Mot. Summ. J. 6 n.4. However, dismissal of a negligent misrepresentation claim does not preclude recision of a transfer of real property. See Taylor v. Gore, 161 N.C. App. 300, 303–04, 588 S.E.2d 51, 54–55 (2003).

[4] A plaintiff need not elect between alternative remedies before summary judgment. Corum v. Univ. of N.C., 330 N.C. 761, 789, 413 S.E.2d 276, 294 (1992). Rather, modern pleading practice allows pursuit of legally inconsistent claims and an election of remedy following the jury's verdict. James River Equip., Inc. v. Mecklenburg Utils., Inc., 179 N.C. App. 414, 419, 634 S.E.2d 557, 560 (2006); Ace Chem. Corp. v. DSI Transps., Inc., 115 N.C. App. 237, 247, 446 S.E.2d 100, 105–06 (1994). Thus, claims for breach of covenant and rescission may proceed to trial, after which a party must elect its remedy. See Winant v. Bostic, 5 F.3d 767, 771, 775–77 (4th Cir. 1993).

(3) that the "defendant or defendant's agent [had] reason to know of plaintiff's mistake or cause[d] plaintiff's mistake"; (4) the mistake was material; and (5) that plaintiff did not assume the risk of a mistake by unreasonably relying on a defendant's representation or treating his limited knowledge of the property as sufficient. Howell v. Waters, 82 N.C. App. 481, 491–92, 347 S.E.2d 65, 72 (1986). All five questions are for the trier of fact. Id., 347 S.E.2d at 72.

As for whether plaintiff's action is time barred, a landowner must "exercise reasonable diligence in informing himself of the condition and extent of his property . . . ." Fulcher v. United States, 696 F.2d 1073, 1077 (4th Cir. 1982). However, reasonable diligence is a question for the jury. Feibus & Co. v. Godley Constr. Co., 301 N.C. 294, 304–05, 271 S.E.2d 385, 392 (1980). As noted, the exact boundary of NCRR's easement was not open and notorious, and therefore not "readily observable by ordinary attention." Fulcher, 696 F.2d at 1077 (quoting Peacock v. Barnes, 142 N.C. 215, 219, 55 S.E. 99, 100 (1906)). Thus, summary judgment on this issue is denied.

As for materiality, a mistake is material if it concerns "a fact which enters into and forms the basis of the contract, or in other words it must be of the essence of the agreement, the sine qua non, or . . . the efficient cause of the agreement, and must be such that it animates and controls the conduct of the parties." MacKay v. McIntosh, 270 N.C. 69, 73, 153 S.E.2d 800, 804 (1967) (quotation omitted). Boundaries of property, the amount of wetlands on property, the location of a flood plain, and the zoning of property may be material to the conveyance of real property. See id. at 73, 153 S.E.2d at 804; Sunset Beach Dev., LLC v. AMEC, Inc., 196 N.C. App. 202, 219, 675 S.E.2d 46, 58 (2009); Taylor, 161 N.C. App. at 304–05, 588 S.E.2d at 55; Howell, 82 N.C. App. at 486–87, 347 S.E.2d at 69. In Taylor, the plaintiff sought to rescind the transfer of real property because a survey of the property inaccurately represented that the property was not in a federal designated flood hazard area. Taylor, 161 N.C. App. at 301–02, 588 S.E.2d at 53. The plaintiff received the survey from the seller's real estate agent. Id. The court affirmed a grant of summary judgment on the basis of negligent misrepresentation, but found that a genuine issue of material fact

13

existed for the jury as to "whether the mistake affected the essence of the contract." Id. at 304, 588 S.E.2d at 55. Here, RAM received a survey from Ensley, its real estate agent, who received it from Pergoy, an employee of WREDCO. That survey contained a representation as to the width of NCRR's right of way. WREDCO knew RAM intended to build a road next to NCRR's right of way because RAM initially requested that WREDCO build the road. Thompson Dep., Ex. 4. WREDCO, as a real estate developer, knew RAM's development plan would be greatly influenced by the placement of the access road. Thus, as in Taylor, genuine issues of material fact exist as to whether the mistake is material.

As for whether RAM unreasonably relied on WREDCO's representation of the size of the right of way or treated its limited knowledge on the subject as sufficient, WREDCO claims RAM unreasonably researched the property's chain of title and failed to independently survey the property. Def.'s Mem. Supp. Mot. Summ. J. 13–15. However, the parties dispute whether RAM's truncated title search and reliance on WREDCO's survey was reasonable. See Thompson Dep. 15, 49, 62, 65–66, 78; Atkins Dep. 32–33, 85–86; cf. Patrick K. Hetrick & James B. McLaughlin, Webster's Real Estate Law in North Carolina § 22-4 (5th ed. 1999) ("Title searches going all the way back to the time when the State conveyed the land for the first time are very rare because they are necessarily expensive and in many cases impossible."). Furthermore, genuine issues remain as to whether an independent survey and a 60-year title examination would have revealed the true width of the right of way. See Thompson Dep. 15, 49, 62, 65–66, 78; Atkins Dep. 32–33, 85–86; cf. Hetrick & McLaughlin, supra, § 22-4 ("In general, a title attorney should not render an opinion on title to property that has not previously been covered by a policy of title insurance unless a search of from forty to sixty years has been made."). Thus, genuine issues of material fact exist as to whether RAM assumed the risk of the mistake. Because genuine issues of material fact exist on each element of RAM's rescission claim, the court denies summary judgment on the rescission claim.

However, survival of the rescission claim does not guarantee survival of the unjust enrichment claim. Generally, a rescinding party only may recover as restitution the consideration it paid in exchange for returning the property to the seller. Lumsden v. Lawing, 117 N.C. App. 514, 518–19, 451 S.E.2d 659, 662 (1995). In extraordinary circumstances, a party may recover restitution without reconveying the property. Id. at 520, 451 S.E.2d at 662–63. However, special damages are available to return the rescinding party to the status quo only when those damages are "caused by the other party's fraud." Kee v. Dillingham, 229 N.C. 262, 265, 49 S.E.2d 510, 512 (1948); Fields v. Brown, 160 N.C. 295, 298, 76 S.E. 8, 10 (1912); Opsahl v. Pinehurst, Inc., 81 N.C. App. 56, 70, 344 S.E.2d 68, 77 (1986). Furthermore, a person induced to improve land by a promise to convey may recover the increase in value caused by the improvements if the promisor subsequently refuses conveyance. Wright v. Wright, 305 N.C. 345, 351–52, 289 S.E.2d 347, 351 (1982). Here, the court has held that WREDCO's representation of the width of NCRR's right of way was not a fraudulent representation [D.E. 19 at 3–4]. Thus, RAM cannot recover special damages should it elect rescission. Moreover, RAM was not induced to improve the property by a promise to convey. Rather, RAM owned the property and chose to improve it on speculation. In essence, RAM seeks indemnification from WREDCO for its losses caused by the "worst real estate slump for new house sales this country's seen in 25 years." See Brydge Dep. 91. Such a result would be inconsistent with North Carolina law and "contrary to equity and good conscience." Beacon Homes, Inc. v. Holt, 266 N.C. 467, 474, 146 S.E.2d 434, 439 (1966). Thus, RAM's claim for unjust enrichment fails.

IV.

As explained above, defendant's motion for summary judgment [D.E. 26] is GRANTED on counts one, three, four, and ten. Summary judgment is DENIED on counts two and nine. The parties are hereby DIRECTED to complete mediation on the remaining claims no later than September 23, 2011.

SO ORDERED. This 23 day of August 2011.

                                              JAMES C. DEVER III
                                              United States District Judge